(No. 16831.—

The Chicago City Railway Company, Appellee, *vs.* The Chicago and Western Indiana Railroad Company, Appellant.

*Opinion filed June 23, 1928—Rehearing denied October 3, 1928.*

C. G. AUSTIN, JR., J. RAYMOND BARSE, and SAMUEL KASSEL, (MILLS & HOWE, of counsel,) for appellant.

JOHN R. GUILLIAMS, and HARRY P. WEBER, (CHARLES M. HAFT, of counsel,) for appellee.

FRANCIS X. BUSCH, Corporation Counsel, JAMES J. COUGHLIN, and C. MORTON DOTY, *amici curiæ* for the city of Chicago.

Per CURIAM: This case comes by appeal from a judgment of the circuit court of Cook county in an action of assumpsit brought by appellee against appellant to recover money expended by appellee in shifting its street car tracks, trolley wires, supporting poles and other equipment from one side of a viaduct in the city of Chicago to the opposite side, and back again, occasioned by the repair of the viaduct by appellant. The viaduct is in line with and maintains the continuity of Clark street above the railroad tracks of appellant. The case was tried by a jury. At the close of all the evidence the court directed a verdict for appellee, on which judgment was entered for the sum of $17,106.65.

The gist of the declaration is, that it was the duty of appellant to maintain the viaduct pursuant to obligations imposed upon it by virtue of certain ordinances of the city of Chicago; that in the year 1919 the viaduct fell out of repair and became unsafe for public travel; that the city, acting through its commissioner of public works, directed appellant to perform the necessary work of re-building the viaduct in such a manner that street railway traffic over it might be maintained during the work of reconstruction; that it was feasible for appellant to repair the viaduct in accordance with the plans and specifications prepared by it at the request of the city and approved by the municipal authorities, without requiring the shifting of the street railway tracks from one side of the roadway to the other dur-

ing the course of the work, and that the only purpose of appellant in doing the repair work in the manner in which it was done was to save itself expense and inconvenience; that appellant refused to bind itself by any agreement to reimburse appellee for the cost and expense incurred by the latter in and about transferring the tracks; that the parties being unable to agree as to which should bear the cost incident to the diversion, the city of Chicago on the 27th day of August, 1920, caused appellee, appellant and the Atchison, Topeka and Santa Fe Railway Company to enter into a stipulation set out in the declaration, for the purpose of defining the methods to be employed in conducting the work of repair, leaving for future determination, by litigation if necessary, the question as to which company should bear the cost of transferring the street car tracks.

To the first count of the amended declaration appellant demurred generally and specially, and filed a plea of the general issue and an affidavit of merits to the common counts. The demurrer to the first count was overruled. After slight amendment to this count appellant filed a plea of the general issue, and a special plea setting up certain ordinances of the city of Chicago as matters of defense. They appear in the stipulation on which the case was tried. A general replication to appellant's pleas was filed. The material facts were embodied in a stipulation for the purpose of the trial. A similar action was brought against the Atchison, Topeka and Santa Fe Railway Company for a portion of the cost incurred by appellee, in the proportion agreed upon by the stipulation. The cases were consolidated and heard on a common record. The Chicago and Western Indiana Railroad Company, only, has perfected and is prosecuting this appeal. The appeal was taken to the Appellate Court for the First District. That court transferred the cause to this court on motion of appellee, based on the ground that a constitutional question is involved.

The principal question involved in this case is as to which of the corporations must pay for moving and replacing the tracks of appellee. It is conceded that the agreement executed in August, 1920, does not determine that question but leaves it entirely open. The stipulation of facts sets out that appellee since about the year 1859 has maintained and operated a street railway in the city of Chicago and since 1870 in Clark street at the point in question; that on September 15, 1879, the city council passed an ordinance granting permission to appellant to lay its tracks and operate its railroad along a specified route, which crossed Clark street at grade between Fifteenth and Sixteenth streets, and appellant accepted the ordinance and constructed and has since operated a railway line thereunder. Section 4 of that ordinance provided that the privileges thereunder were granted "upon the express condition that said railroad company shall erect and maintain viaducts over any of its said tracks on any street or streets in said city which may be crossed by said tracks where and as the city council may from time to time require and under the supervision of the department of public works or other proper department or officer of said city, and erect and construct the approaches to all such viaducts." On May 17, 1897, the city council of the city of Chicago passed an ordinance requiring the elimination of certain grade crossings and the building by appellant of viaducts, including the one here involved, so as to carry the street railway and vehicular and foot traffic over the tracks of appellant at the point where those tracks crossed Clark street. This ordinance by section 4a described the viaduct and approaches to be constructed by appellant, and provided for retaining walls, fences and railings, conformity of sidewalks with the roadway, the materials and workmanship with which the viaduct was to be constructed, and also required that appellant should construct it jointly with the Atchison, Topeka and

Santa Fe Railway Company. By section 6 of the ordinance it was required that all of the streets affected by such viaducts should be changed to conform to the grade of the viaducts. Section 8 provided: "Any street railway company occupying any of the streets of the city of Chicago crossed by said elevated or depressed railway shall, when and as the grade of such street shall be changed as in this ordinance provided, at its own expense, without claim for damages, conform the grade of its track or tracks to the change of grade on said streets." This section also provided that appellee should pave or bear the expense of paving such streets between or on either side of the rails of its tracks in the manner required by law.

On February 11, 1907, appellee received from the city of Chicago its present license to operate its cars on certain streets of the city, including Clark street. Section 35 of the street railway ordinance of 1907 specifically reserves to the city of Chicago the right to exercise any police power which it would have possessed had the ordinance not been granted. The ordinance contains no provisions requiring that appellee maintain and keep in repair the viaducts built under the ordinance of 1897 by appellant or that it assist in so doing. This ordinance was accepted by appellee, and it has since operated its street railway lines in accordance therewith.

The viaduct, when constructed by appellant, came under control of the city authorities. (*McCartney* v. *Chicago and Evanston Railway Co.* 112 Ill. 611.) The duty to maintain and keep that viaduct in repair arises out of the ordinance of 1879, which the city passed under its police power but which appellant by its acceptance also contracted to carry out, and out of the ordinance of 1897. Appellant's railroad prior to the erection of the viaduct crossed Clark street at grade. This street has long been a busy thoroughfare, used by a large number of pedestrians and vehicles. Appellee was also using this street under its license secured from the

city in 1870. The viaduct was built in accordance with the requirements of the ordinance of 1897. That ordinance provided that when the separation of grades had been completed, all ordinances of the city relating to speed of trains should cease to be applicable to the railroads which accepted the ordinance. This was, it is conceded, a consideration of substantial value. In 1919 the viaduct became in bad repair, and in June of that year the city of Chicago notified appellant that the Clark street viaduct over its right of way was in a very bad condition and must be re-built. On July 15 the engineer of bridges of the city of Chicago again notified appellant that on account of the bad condition of this viaduct the Chicago Surface Lines had requested the city to have appellant place temporary wooden posts under the structure pending reconstruction, and directed that appellant proceed accordingly. On August 8, 1919, the commissioner of public works again wrote the chief engineer of appellant calling attention to the unsafe condition of the Clark street viaduct, and informing him that any differences between appellant and the Chicago Surface Lines must be adjusted before the steel arrives on the site, in order that there be no delay in re-building the viaduct. This communication also stated: "Should such delay occur, the city is empowered to build this structure and bill the railroad company for the costs of same." On August 18, 1919, the chief engineer of appellant communicated with the engineer of bridges of the city of Chicago, enclosing plans for the proposed repair of the Clark street viaduct and asking that the city's engineer look them over to see if they were satisfactory. On August 20, 1919, the superintendent of streets of the city of Chicago wrote appellant, again calling attention to the dangerous condition of the viaduct at Clark street, reciting that the structural steel supporting the viaduct was badly rusted and in a dangerous condition, and referring particularly to a large girder which swung underneath the structure. This communication also suggested

the erection of struts underneath the lower girder pending the repairs. On August 28 following, the superintendent of streets again wrote appellant, stating that it would not be practicable to exclude traffic from the viaduct, and directing that it place timbers underneath the girders to make the structure safe until such time as it was repaired. On September 22, 1919, the chief engineer of the city again addressed a communication to appellant, saying that the east sidewalk on the South Clark street viaduct had reached a point where it was in danger of collapsing, and directing appellant to take out the sidewalk and erect necessary barricades. On August 28 a conference was held relative to the repair of the viaduct, at which appellee's engineer suggested that street railway traffic might be maintained over the viaduct either by blocking over the railroad tracks beneath the structure or making the necessary expenditure for transfer of the street car tracks, and that such should be done by appellant. It appears that communication between these parties and between the city and appellant was kept up until June 15, 1920, when appellant requested a permit for itself and the Santa Fe Railway Company for the repair of the viaduct. In this application it stated that the street railway tracks should be moved. It is stipulated in this case that appellee objected to moving its tracks unless appellant would agree to reimburse it. It was agreed by appellee and appellant that the former should carry on the work of transferring its tracks, and that when the cost had been ascertained appellee "may institute actions in assumpsit against each of said railroad companies in the circuit court of Cook county, Illinois, to determine the liability of said railroad companies for the said cost and expense incurred by it in and about said street railway tracks and trolley as hereinafter provided, and may maintain against said railroad companies such action, if any, as might be maintained either by the city of Chicago or said Chicago City Railway Company, irrespective of the question as to

which of them had performed the work and incurred the cost and expense which said Chicago City Railway Company is by this agreement obligated to incur."

It will be noted from the facts here detailed that the city at no time directed the street car company to move its tracks pending the repair of the viaduct by appellant or in any way sought to exercise its police powers over that railway. The question, therefore, as to the power of the city to require the street railway company to transfer its tracks does not here arise. Much space in the briefs is devoted to this question, but it is not in the case. The question involved is a simple one. It is, Who is to pay for transferring these tracks, under the facts herein detailed? It is conceded that the duty to maintain and repair the viaduct rests on appellant. It is contended by appellant that to require it to pay the expense of this transfer would be to take its property without due process of law, in violation of the State and Federal constitutions. If this expense is an incident to the liability of appellant to keep the viaduct in repair, which liability is conceded, the judgment against it is not wanting in due process.

Appellant objects to the jurisdiction of the circuit court to try this cause, contending that the matter is one of determining the distribution of cost of this track transfer and rests solely in the Commerce Commission under the Public Utilities act. The question involved is as to the duty of the parties to the contract under the admitted facts and the ordinances by which they operate in the city of Chicago. This question is purely one of law. Jurisdiction is authority to hear and decide a cause. *People* v. *Talmadge,* 194 Ill. 67; *Owners of Lands* v. *People,* 113 id. 296.

It will also be noted that appellant has by its stipulation agreed that the cause should be presented to the circuit court of Cook county. While by the stipulation appellant reserved the right to object to the jurisdiction of the court, the abstract does not disclose that a plea to the jurisdiction

of the court was filed or that appellant abided its demurrers to the declaration. No such question is raised here if presented on the trial. The question whether the Commerce Commission has authority to pass on issues concerning liability for or distribution of costs as between utilities required to make certain improvements is not, therefore, in this case. The circuit court had jurisdiction.

Regardless of the right of the city, under the police power, to require the repair of this viaduct, it was not necessary to exercise that power, as by the terms of the ordinance of 1879, to which appellant by accepting it agreed, appellant contracted to construct and maintain viaducts at such street crossings as the city council might by ordinance direct. Where, as here, the obligation to re-build or repair rests in contract it is unnecessary that the police power be exercised. There is no evidence in the record tending to show either that appellee contracted to maintain this viaduct, or that the city, under the police power or any contract ordinance, called upon appellee to transfer its tracks.

Liability of appellant for the cost of the transfer of the street railway tracks depends, first, on whether such transfer is to be considered an incident to the repair of the viaduct. If so, it came within the scope of the expense for which appellant was liable. We are of the opinion that it is an expense incident to the repair of this viaduct. Two methods were considered, one of which was to brace the viaduct by false work underneath while repairs were going on. This plan could have been followed without the transfer of the street railway tracks. Appellant, for reasons best known to itself, chose to follow the method requiring the transfer of the tracks. If it can avoid the expense of this transfer, which it deemed preferable as a means of repairing the viaduct, no reason is seen why it might not also avoid liability for the cost of the removal and replacement of the sidewalk and the paving bricks. The transfer of the tracks

was an incident to the repair of the viaduct. Appellee was under no orders from the city. It was, and had been, giving continuous service, and it is not even contended that it was under any obligation to do anything at all with the viaduct. The transfer of its tracks was a matter which appellant considered a necessary incident to the repair of the viaduct, or at least a preferred method of repair. It was an expense to be borne by appellant as a part of the cost of repair, and the circuit court did not err in instructing the jury to return a verdict for appellee for the amount expended by it in transferring its tracks. Under this view of the case it does not become necessary to consider the constitutional question raised by appellee.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*